**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **ANGELA ELISE HUDMAN,** | § | |
| | § | |
| | § | **CIVIL ACTION NO.  6:21-CV-00321-JDK-** |
| **Plaintiff,** | § | **JDL** |
| | § | |
| **v.** | § | |
| | § | |
| **COMMISSIONER, SOCIAL SECURITY** | § | |
| **ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | | |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

On August 17, 2021, Plaintiff initiated this civil action pursuant to the Social Security Act ("The Act"), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits.  Pursuant to 28 U.S.C. § 636(b), the case was referred to the undersigned for findings of fact, conclusions of law, and recommendations for the disposition of the case. For the reasons stated below, the Court **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED.**

**BACKGROUND**

On July 19, 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. *See* Transcript ("Tr.") at 95–96. The application alleged a disability beginning December 21, 2018. *Id.* The claim was denied initially on October 15, 2019, and upon reconsideration on January 29, 2020.  *Id.* at

117; 126. Plaintiff sought review of the denial at an administrative hearing and had a telephonic hearing on January 14, 2021. *Id.* at 36. The ALJ issued an unfavorable decision February 03, 2021 and Plaintiff sought review. *Id*. at 36–44. On April 14, 2021, Plaintiff's request for review was denied. *Id.* at 27–29.  Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000).  Plaintiff has filed the instant action for review.

## <u>STANDARD</u>

Title II of the Act provides for federal disability insurance benefits.  Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam).  A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Homan v. Comm'r of Soc. Sec. Admin.*, 84 F. Supp. 2d 814, 818 (E.D. Tex. 2000). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*," and is not allowed to substitute its judgment for the Commissioner's judgment. *Id.* (quoting *Bowling*, 36 F.3d at 435).  Rather, conflicts in the evidence are for the Commissioner to decide. *Id.* (citing *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993)); *see Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance – that is, enough that a reasonable mind would judge it sufficient to support the decision." *Brown v. Astrue*, 344 Fed. Appx. 16, 18–19 (5th Cir. 2009) (citing *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Id.* at 19 (citing *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987)). However, the Court must do more than "rubber stamp" a decision by the ALJ, it must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985) (internal quotation omitted).

Claimant has the burden for proving disability. *Id.* (citing *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991)). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(I)(1)(A); 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five step sequential process to determine if the claimant is disabled, and finding "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Step One determines whether the claimant is actually engaged in any "substantial gainful activity." At Step Two, the Commissioner determines whether the claimed physical and/or mental impairments are "severe." At Step Three, the Commissioner determines whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. This step also involves determining the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Step Four

determines whether the claimant is capable of performing his past relevant work. Finally, Step Five determines whether the claimant can perform other work available in the local or national economy. 20 C.F.R. § 404.1520(b)–(f). An affirmative answer at Step One or negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id.* The burden of proof is on the claimant for the first four steps, but Shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (per curiam).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings in her February 3, 2021 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2024.

2. The claimant has not engaged in substantial gainful activity since December 21, 2018, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: migraines and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except:
• She can perform simple routine tasks at a consistent pace, but not at a production rate pace where each task must be completed within a strict time deadline.
• She must avoid unprotected heights.
• She requires a quiet noise intensity level as defined in the D.O.T.
• She can never be exposed to extreme heat, cold, wetness or humidity.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 7, 1973 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 21, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. at 38–44.)

The ALJ determined that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. *Id.* at 44.

## ANALYSIS

Plaintiff alleges that the decision of the Commissioner is not supported by substantial evidence because the ALJ failed to incorporate off-task/absence limitations into her RFC determination based upon the Plaintiff's severe impairments. (Doc. No. 19, at 8–12.) Specifically, Plaintiff's main allegation is that while the ALJ found Plaintiff's migraine headaches to be severe, the ALJ did not include any limitations in the RFC for while a migraine is occurring. *Id.* at 9. As a result, Plaintiff argues that the vocational expert's testimony that Plaintiff can work on a sustained full-time basis was incorrect. *Id.* Plaintiff also complains that the ALJ did not account for her other migraine triggers in the RFC, such as limitations relating to exposure to bright lights

or strong odors to prevent migraines from being triggered.[1] *Id*. at 8. Further, Plaintiff argues that the ALJ's credibility finding was defective because of the error in the RFC and because the ALJ did not consider Plaintiff's stellar work history.[2] *Id*. at 12. The Commissioner argues that the ALJ properly accounted for the impact of Plaintiff's migraines by "limiting the nature of the work environment and the complexity and pace of work activity" in the RFC. (Doc. No. 20, at 5.)

## I.    The ALJ's RFC Finding

The RFC is an assessment made by the Commissioner, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his physical or mental impairments.  20 C.F.R. § 416.945(a); *Myers v. Apfel,* 238 F.3d 617, 620 (5th Cir. 2001). When evaluating a claimant's physical abilities, the Commissioner first assesses the nature and extent of physical limitations, and then determines the RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545. The ALJ makes separate function-by-function findings of the seven exertional strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling), and other non-exertional physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching). SSR 96-8; 20 C.F.R. § 404.1545(b). Pursuant to the narrative discussion requirement provided in SSR 96–8, in the ALJ's discussion of the claimant's abilities to perform any of the seven strength demands, "each function must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine activities (e.g., 'walk/stand, lift/carry, push/pull'). It is especially important that adjudicators consider the capacities separately when deciding whether an individual can do past relevant work." SSR 96–8p. Only after the

---

[1] The court does not reach this issue as the court is remanding on the basis that the ALJ must address the limitations Plaintiff has while experiencing a migraine.

[2] The court does not reach this issue as the court is remanding on the basis that the ALJ must address the limitations Plaintiff has while experiencing a migraine.

function-by-function analysis may the RFC be expressed in terms of the exertional levels of work (sedentary, light, medium, heavy, and very heavy). SSR 96-8.

Here, Plaintiff alleges that the ALJ erred by not including any off-task/absence limitations in the RFC. (Doc. No. 19, at 4–12.) Plaintiff states that "despite finding Plaintiff's migraine headaches to be a severe impairment, the ALJ failed to account for the most limiting effects of her migraines, namely her need to absent herself from activities and lie down in a dark room during the peak period of those headaches, in the RFC finding." *Id*. at 5. (internal quotations omitted). Plaintiff stresses that none of the RFC limitations address Plaintiff's limitations while a migraine is occurring. *Id*. at 9. Plaintiff states that this results in an RFC that suggests that Plaintiff can work while a migraine is occurring and this is inconsistent with the medical record. *Id*. Plaintiff then states that this error is not harmless as the vocational expert testified that missing more than 2/3 days of work per month would preclude the ability to engage in substantial competitive employment. *Id*. Plaintiff alleges that the medical record shows that she gets about one migraine per week that lasts several hours and that the inclusion of such an absence limitation in the RFC would be preclusive. *Id*.

Plaintiff further states that even though the ALJ noted that certain medications improved Plaintiff's migraine frequency (like Aimovig)[3], the records show that Plaintiff still gets migraines about once a week for several hours. *Id*. Finally, Plaintiff argues that the ALJ erred when she found that Dr. Sepulveda's opinion was unpersuasive because Dr. Sepulveda stated that Plaintiff's headaches could possibly be from medication overuse (Tramadol) on the day he prepared his opinion. *Id*. at 10. Plaintiff states that she stopped taking Tramadol twice and still continued to

---

[3] Plaintiff mentions that Aimovig became cost prohibitive when Plaintiff lost her health insurance and that the ALJ should have taken note of this. However, the court does not reach this argument because the medical records show that even while taking Aimovig Plaintiff still had regular migraines.

experience migraines, proving that her migraines were not the result of medication overuse. *Id*. Plaintiff also mentions that Dr. Boyne's report corroborates that Plaintiff has migraines about once a week for several hours, supporting Dr. Sepulveda's findings. *Id*. Overall, Plaintiff complains that the medical records show that Plaintiff consistently has at least one migraine per week for several hours, during which she cannot work, and the ALJ did not include any limitations related to this in the RFC finding. *Id*. at 8–12.

The Commissioner responds that the ALJ did account for the impact of Plaintiff's migraines in the RFC limitations by "limiting the nature of the work environment and the complexity of the pace of work activity." (Doc. No. 20, at 5.) The Commissioner states that even though Plaintiff testified that she experiences fatigue, nausea, and incapacitation during her migraines, the ALJ found that this was not consistent with the medical record and with Plaintiff's statements to her treatment providers. *Id*. at 6. The Commissioner also argues that the ALJ did not commit error by finding Dr. Sepulveda's opinion unpersuasive because Dr. Sepulveda discontinued Tramadol due to possible "medication overuse headache" three days before Dr. Sepulveda's statement of how debilitating Plaintiff's migraines were. *Id*. at 7. The Commissioner also states that the ALJ did not err by discounting Dr. Sepulveda's report because Plaintiff had not had a headache for up to 10 days while on Aimovig prior to Dr. Sepulveda's report. *Id*. Further, the Commissioner states that the ALJ did not err by discounting Dr. Sepulveda's report because it was not consistent with the record of other medical providers. *Id*. The Commissioner argues that it is irrelevant that Plaintiff could no longer afford Aimovig because Plaintiff has not made a showing of disability. *Id*. at 7–8.

Here, the ALJ found that Plaintiff has an RFC to perform medium work with the additional limitations that: she can perform simple routine tasks at a consistent pace, but not at a production

rate pace where each task must be completed within a strict time deadline; she must avoid unprotected heights; she requires a quiet noise intensity level as defined in the D.O.T; and she can never be exposed to extreme heat, cold, wetness or humidity. Tr. at 39–40. The ALJ states that "*based on the claimant's report that stress could trigger her migraines* and the potential of her medication to cause difficulty thinking, the undersigned limited her to *simple and routine tasks not at a production rate pace*." *Id*. at 42. (emphasis added). The court reads this limitation as addressing Plaintiff's migraine triggers, but not as an absence limitation for when Plaintiff cannot work during a migraine. Thus, the court finds that the ALJ did not account for potential limitations related to Plaintiff being unable to work during her migraines that the medical records show occur on a weekly basis, and therefore the RFC is not supported by substantial evidence.

Here, the ALJ failed to include limitations related to Plaintiff's inability to work during migraines. The medical records show that Plaintiff experiences migraines on a weekly basis and that the migraines last at least several hours. *See* Tr. at 102 (Dr. Reid stating in his findings of fact and analysis of evidence that Plaintiff's migraines were overall better "but continue approximately once a week lasting hours."); Tr. at 412 (Dr. Boyne stating that, "Headaches are overall better than in the past though continue approximately once per week, lasting a number of hours."); Tr. at 439 (Dr. Sepulveda stating that Plaintiff has migraines once a week that last 2–3 days.)

Further, medical records state that Plaintiff's migraines are debilitating. Dr. Sepulveda's report states that when Plaintiff experiences a migraine, she has severe pain that prevents all activity. Tr. at 439. Dr. Sepulveda states that when Plaintiff experiences migraines, it is helpful for her to lie down in a quiet, dark room. *Id*. at 440. The other medical providers do not specify the effects that the migraines have on Plaintiff. However, there is nothing in the record to contradict Dr. Sepulveda's statement that Plaintiff's migraines are debilitating when they occur. Even though

the ALJ rejects Dr. Sepulveda's opinion to the extent that Dr. Sepulveda states that Plaintiff's migraines occur once a week for several days (instead of hours), the ALJ does not address the part of Dr. Sepulveda's opinion that states that Plaintiff cannot perform any activity during the migraines. Tr. at 41–42.

Thus, the court finds that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not address potential limitations Plaintiff has during her migraines and such limitations could affect the vocational expert's testimony that Plaintiff is able to work on a sustained full-time basis. As such, the court finds that remand is proper for further consideration of Plaintiff's RFC with respect to potential limitations Plaintiff has during migraines. Consistent with this determination, the ALJ shall then consider whether Plaintiff can perform her past relevant work and whether she can perform other work available in the local or national economy.

The court therefore **RECOMMENDS** that the case be **REVERSED** and **REMANDED** to the Commissioner.

## CONCLUSION

In light of the foregoing, pursuant to 42 U.S.C. § 405(g), the court **RECOMMENDS** that the final decision of the Commissioner should be **REVERSED** and **REMANDED** for reconsideration in accordance with the findings herein.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

10

**So ORDERED and SIGNED this 19th day of July, 2022.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE